UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>LER WAH GUIDE,<br><br>          Defendant. | 4:15-CR-40114-01-KES<br><br>ORDER DENYING<br>MOTION TO DISMISS |

**NATURE AND PROCEDURE OF CASE**

Defendant, Ler Wah Guide, is charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(9). Guide has moved to dismiss the indictment arguing that his 2013 misdemeanor conviction for domestic abuse in Beadle County, South Dakota, does not qualify as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33)(B)(i)(II). Docket 55. Guide specifically contends that he did not knowingly and intelligently waive his right to a jury trial when he pleaded guilty to the charges against him in Beadle County. *Id.* The court held an evidentiary hearing on Guide's motion on February 16, 2017. For the following reasons, the court denies Guide's motion to dismiss.

**FACTS**

Based on the testimony given and the exhibits introduced at the evidentiary hearing, the court finds the following facts by the greater weight of the evidence:

Guide is a permanent resident alien who immigrated to the United States from Myanmar (Burma) in 2006.[1] After immigrating to the United States, Guide eventually settled in Huron, South Dakota. Guide is a part of a minority ethnic group in Burma whose primary language is Karen.[2] Guide's schooling in Burma ended after he completed the fifth grade. The only language Guide can speak and read is Karen. Guide does not read or speak English.

On August 26, 2013, a complaint was filed against Guide for Simple Assault Domestic Abuse in Beadle County, South Dakota. Guide first appeared in court for this charge on September 4, 2013. At this hearing, the Beadle County Court appointed Jeffrey Burns to represent Guide and continued Guide's initial appearance.[3] On September 18, 2013, Guide reappeared before the Beadle County court for his initial appearance. This hearing was continued for an additional two weeks at the request of Burns so Guide and Burns could meet with an interpreter present.

On the morning of October 2, 2013, Guide returned for his initial appearance. Guide met with Burns and an interpreter, Eh Mwee Pohto, prior to

---

[1] In 1989, the military government of "Burma" changed the country's name to "Myanmar." U.S. Dep't of State (Jan. 27, 2017), http://www.state.gov/r/pa/ei/bgn/35910.htm. Because the witnesses who testified at the evidentiary hearing referred to the country as "Burma," the court will use the term "Burma." This use is for the reader's ease and is not intended to express any view regarding the names Burma or Myanmar.

[2] Burmese is the primary language in Burma and is more commonly spoken than Karen. *See* Docket 67 at 39.

[3] While Burns acknowledged that he represented Guide in state court on Guide's domestic abuse charge, he testified that he had no independent recollection of the particular facts of Guide's case. Docket 67 at 11.

2

the hearing. This meeting lasted for about eighteen minutes.[4] Given Burns's normal practice, during this meeting he would have advised Guide of his right to a jury trial on his domestic abuse charge and discussed with Guide the consequences of pleading guilty, including the loss of the right to a jury trial.

The Beadle County court proceeded in its typical manner on October 2, 2013. First, the court was called to order around 9:00 a.m. Next, the Beadle County magistrate judge began the hearing by giving all of the defendants present a mass advisement of their rights. Finally, after the magistrate judge finished giving the mass advisement, the court began calling individual cases on the docket.[5]

Because the Beadle County court typically has a number of cases involving non-English speaking defendants, Spanish and Karen interpreters are present to translate the magistrate judge's mass advisement and interpret for individual cases.[6] Prior to the start of a hearing, these interpreters identify the non-English speaking defendants present and direct them to the courtroom's jury box. Once in the jury box, these defendants are separated so

---

[4] Burns's billing statement indicates that he spent .8 hours or about 50 minutes with Guide on October 2, 2013. Exhibit A-16; Docket 67 at 16. According to Burns, he typically spends about 30 minutes with a client in the courtroom at an initial appearance and the remaining time would be spent with the client outside of the courtroom. Docket 67 at 16-17, 27-30.

[5] The Beadle County Court followed this same protocol at the start of Guide's other hearings in September 2013. *Compare* Exhibit 1 at 2-4 (Beadle County Transcript from October 2, 2013) *with* Exhibit 2 at 2-4 (Beadle County Transcript from September 18, 2013) and Exhibit 3 at 2-4 (Beadle County Transcript from September 4, 2013).

[6] Pohto was the Karen interpreter used by the Beadle County Court on October 2, 2013. Docket 67 at 53, 62-63.

that the mass advisement can be translated in Spanish and Karen, respectively, as the magistrate judge gives it. The translators then assist with individual cases as needed.

Those defendants who speak and read Karen also receive a written advisement form from the interpreter. This form is translated from English to Karen and describes the rights that defendants have, such as the right to a speedy trial and the right to a jury trial. Karen defendants may read this form while the mass advisement is being translated and can keep the form to read after the mass advisement is finished. Karen defendants also have the opportunity to review the form with the interpreter after the magistrate judge finishes giving the mass advisement of rights. Karen defendants who wish to plead guilty must sign this form below the advisement indicating that the defendant has read their rights and understands those rights.

Guide was present and in the jury box with the other Karen speaking defendants during the magistrate judge's mass advisement on October 2, 2013. The advisement was orally translated from English to Karen by Pohto, who Guide knew personally. Guide also received the translated advisement of rights form from Pohto prior to the start of the hearing. Guide had the form, which he signed, for about twenty minutes before his case was called by the magistrate judge. Guide did not indicate to Pohto, Burns, or the magistrate judge that he did not understand his mass advisement or the rights contained in the form.[7]

---

[7] While Pohto's testimony at the evidentiary hearing indicated that the magistrate judge normally asked Karen speaking defendants if they understood the mass advisement, *see* Docket 67 at 70, the transcript from Guide's hearing

Guide's case was called by the Beadle County court at 9:22 a.m. Guide appeared with Burns, who stated that Guide desired to plead guilty. During Guide's individual exchange with the magistrate judge, Guide orally acknowledged that he understood the maximum possible penalties associated with his misdemeanor domestic abuse charge. Burns then provided the court with Guide's signed advisement of rights form.[8] After the court accepted Guide's guilty plea, the magistrate judge sentenced Guide to thirty-six days in prison, with thirty days suspended, and gave Guide a total fine of $525.00.

## DISCUSSION

Guide argues that his 2013 misdemeanor conviction for domestic abuse does not qualify as a predicate "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33).[9] Docket 55. In support of his argument, Guide contends that the Beadle County court records from October 2, 2013, fail to establish that he knowingly and intelligently waived his right to a jury trial, as required

---

makes clear that Guide was not asked if he heard and understood his rights. *See* Exhibit 1 at 4.

[8] Guide indicated that his signature on his advisement of rights form, *see* Exhibit A-9 and A-10, was different than his signature on other Beadle County court documents, *see* Exhibit A-3, because the advisement of rights form asked for him to put his "name" on it and not his "signature." Docket 67 at 47.

[9] Guide does not dispute that he was convicted of Simple Assault Domestic Abuse in violation of SDCL § 22-18-1(5). Docket 69 at 8. Guide also does not dispute that SDCL § 22-18-1(5) satisfies the generic definition of a "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33)(B)(i)(II). *Id.*; *see United States v. Horse Looking*, 828 F.3d 744, 749 (8th Cir. 2016) (dismissing an indictment, alleging a violation of 18 U.S.C. § 922(g)(9), where state trial court records did not identify the specific subsection of SDCL § 22-18-1 that served as Horse Looking's prior assault conviction).

5

by 18 U.S.C. § 921(a)(33)(B)(i)(II)(bb), when he pleaded guilty to Simple Assault Domestic Abuse on October 2, 2013, in the Beadle County court. *Id.*

## I.     Standard for Waiver of Right to Jury Trial.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. Criminal defendants, however, may waive their constitutional right to a jury trial. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275 (1942). "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Id.* at 278. When evaluating the "unique circumstances" of a given case, courts may consider a number of factors that bear on the defendant's ability to understand the right to waive a jury trial and on a defendant's ability to understand discussions regarding the waiver of the right to a jury trial. *See United States v. Leja*, 448 F.3d 86, 93-94 (1st Cir. 2006) (compiling cases discussing some relevant factors in assessing the validity of a defendant's wavier of the right to a jury trial); *Sowell v. Bradshaw*, 372 F.3d 821, 831-36 (6th Cir. 2004) (evaluating the facts and circumstances surrounding the defendant's decision to sign a written waiver of the right to trial by jury in a death penalty case); *United States v. Pfeifer*, 371 F.3d 430, 434 (8th Cir. 2004) (taking into account a defendant's background, experience, and conduct when assessing the validity of a waiver of the right to counsel).

In defining the term "misdemeanor crime of domestic violence," under 18 U.S.C. § 921(a)(33), Congress has seemingly adopted the federal constitutional standard for waiving the right to a jury trial by providing:

> (B)(i)  A person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] unless—
>
> (I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and
>
> (II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either
>
> (aa) the case was tried by a jury, or
>
> (bb) the person *knowingly and intelligently waived the right to have the case tried by a jury*, by guilty plea or otherwise.[10]

18 U.S.C. § 921(a)(33) (emphasis added).

Three observations from federal courts regarding the analysis of challenges seeking to contest the validity of a waiver of the right to a jury trial are relevant to the court's disposition of Guide's motion to dismiss the indictment. First, federal courts addressing whether an individual knowingly and intelligently waived the right to a jury trial agree that the federal constitutional standard applies when evaluating the validity of the waiver. *United States v. Williams*, 559 F.3d 607, 613 (7th Cir. 2009); *United States v. Frechette*, 456 F.3d 1, 11 (1st Cir. 2006) (applying federal standard to assess

---

[10] Guide had the right to a jury trial on his misdemeanor simple assault charge because it carried a maximum punishment of up to one year. *See State v. Auen*, 342 N.W.2d 236, 238 (S.D. 1984) (guaranteeing the right to a jury trial for prosecution of all offenses punishable by more than six months).

7

whether defendant knowingly and intelligently waived right to a jury trial under 18 U.S.C. § 921(a)(33)(B)(i)(II)(bb)); *cf. Pfeifer*, 371 F.3d at 434 (applying federal standard to assess whether a defendant knowingly and intelligently waived the right to counsel under 18 U.S.C. § 921(a)(33)(B)(i)(I)). Second, federal courts have concluded that defendants bear the burdens of persuasion and production when claiming that there was a lack of a knowing and intelligent waiver. *Williams*, 559 F.3d at 613; *Frechette*, 456 F.3d at 12-13. Third, federal courts agree that no single constitutional requirement exists requiring that waivers of the right to counsel take a particular form. *Williams*, 559 F.3d at 610 (compiling cases and concluding that the waiver of the right to a jury trial can result from signed written waiver or result from an individual colloquy between the court and the defendant); *Sowell*, 372 F.3d at 834 (citing *United States v. Martin*, 704 F.2d 267, 274-75 (6th Cir. 1983)) (observing that "colloquies are not constitutionally required" and that "an extremely perfunctory waiver with no colloquy" can be "constitutionally adequate" when waiving the right to a jury trial); *Hyatt v. Weber*, 468 F. Supp. 2d 1104, 1114-15 (D.S.D. 2006) (stating that a waiver of the right to a jury trial can be made in writing or orally on the record).

**II.   Whether Guide knowingly and intelligently waived his right to a jury trial?**

Guide raises four arguments in support of his motion to dismiss the indictment: (1) Guide claims that he was ignorant of his right to a jury trial; (2) Burns's testimony does not contradict Guide's lack of understanding of the

right to a jury trial; (3) the advisement of rights form does not contradict Guide's lack of understanding; and (4) the mass advisement does not contradict Guide's lack of understanding. Docket 69.

### A. Guide understood he had the right to a jury trial.

In support of Guide's contention that he failed to understand he possessed the right to a jury trial on his misdemeanor domestic abuse charge, Guide highlights his lack of education, his unfamiliarity with legal systems (whether in Burma or in the United States), his inability to understand the English language, and his anxiousness surrounding his 2013 guilty plea. *See* Docket 75 at 2-5. In many respects, Guide's underlying argument, when taken to its logical conclusion, is that his lack of understanding of the English language and the American legal system is so deficient that Guide could never understand—let alone knowingly and intelligently waive—his right to a jury trial. The court declines to make such a finding.

Guide raises his argument regarding his lack of understanding of his right to a jury trial nearly four years after he pleaded guilty to Simple Assault Domestic Abuse in violation of SDCL § 22-18-1(5). Further, Guide now makes this argument despite the uncontradicted evidence that Guide was present in the Beadle County courtroom on at least three separate occasions while the mass advisement was translated to him from English to Karen. *See* Exhibits 1-3 (Transcripts of Guide's Beadle County hearings on October 2, 2013, September 18, 2013, and September 4, 2013). As both the Fourth and Fifth Circuits have found, in the absence of evidence to the contrary, a reviewing

court can consider the normal procedures employed by the court being reviewed in determining whether an individual has knowingly and intelligently waived his right to a jury trial. *United States v. Bethurum*, 343 F.3d 712, 717-18 (5th Cir. 2003) (reviewing a court's normal procedure to secure a waiver of the right to a jury trial in concluding that the defendant knowingly and intelligently waived his right to a jury trial); *United States v. Jennings*, 323 F.3d 263, 276 (4th Cir. 2003) (same).

Multiple witnesses testified at the evidentiary hearing regarding the normal practice of the Beadle County court when giving the mass advisements of rights and how those rights are conveyed to non-English speakers. *See* Docket 67 at 9-11, 12-15 (testimony of Burns); *id.* at 51-56 (testimony of Marilyn McHenry, the Beadle County Clerk of Courts); *id.* at 63-65, 66-70 (testimony of Pohto). The court finds this testimony credible. It establishes that the Beadle County court's normal procedure ensures that Karen speaking individuals are informed of their rights through oral translation of the Judge's advisement from English to Karen and through a written advisement that is written in both English and Karen. Further, as Pohto made clear in her testimony, in addition to simultaneously translating the magistrate judge's advisement orally, she provides all Karen speaking defendants with a copy of the written advisement form and orally informs them to ask her or the court if they have any questions.[11] *Id.* at 68-70.

---

[11] The advisement of rights form explicitly informs defendants to let the judge know if they do not understand their rights. *See* Exhibit A-10 ("If you are not

10

The court does not find Guide's testimony regarding his lack of understanding of his right to a jury trial on his misdemeanor domestic abuse charge to be credible. As is clear from Guide's own testimony, he can speak and read Karen. *Id.* at 49-50. And Guide was present in the Beadle County courtroom for this specific charge on no less than three separate occasions. Thus, taking into account the normal procedures employed by the Beadle Count court—that Guide would have been placed in the jury box where he was informed of his rights both orally in Karen and in writing in Karen on each of these occasions—the court concludes that Guide was adequately informed of his right to a jury trial on his domestic abuse charge.[12] *See Bethurum*, 343 F.3d at 717-18; *Jennings*, 323 F.3d at 276.

This finding is supported by two further facts. The first is Guide's more general understanding of the right to a jury trial from Guide's two prior DUI convictions that would have resulted in him following this same procedure on both occasions. *See* Docket 67 at 48-51. The second is Guide's testimony during the evidentiary hearing when he testified that he could not remember this court informing him of his right to a jury trial on the current federal charges. *See id.* at 51. The court finds that this testimony is not credible. This court advised Guide of his right to a jury trial in detail during an individual

---

sure or do not understand this or the charges against you, please ask the judge and he/she will explain than [sic] in more detail.").

[12] Similarly, Burns testified that his normal practice for advising a client who desires to plead guilty would include a discussion of the client's right to a jury trial on this type of offense and that by pleading guilty the client would be giving up their right to have a trial. Docket 67 at 25-26.

colloquy, in a small courtroom, with the help of a federally certified Karen interpreter, and just two weeks earlier. *See* Docket 44. While the court sympathizes with Guide's statements that he was nervous regarding his domestic abuse charge and confused by the many moving parts in the Beadle County courtroom, he has not presented sufficient evidence to demonstrate that he did not understand that he had the right to a jury trial on his misdemeanor domestic abuse charge. *See Williams*, 559 F.3d at 615 (concluding that the defendant understood he possessed the right to a jury trial and "bears the consequence for his failure to make a record" on the subject).

### B. Guide knowingly and intelligently waived his right to a jury trial.

Similar to Guide's arguments regarding his lack of knowledge of the right to a jury trial, Guide argues that his lack of education, unfamiliarity with legal systems, inability to understand the English language, and anxiousness surrounding his 2013 guilty plea all necessitate the finding that he did not knowingly and intelligently waive his right to a jury trial on his domestic abuse charge. *See* Docket 75 at 2-5. Guide also argues that the many moving parts in the Beadle County courtroom on October 2, 2013, demonstrate that he could not have knowingly and intelligently waived his right to a jury trial. *Id.* at 3. Included in these moving parts are Guide's assessment that at least three people were all talking at the same time, e.g. the magistrate judge and the Spanish and Karen interpreters, and that the majority of this action is taking place in a crowded jury box. *See id.* Guide also contends that the advisement of

12

rights form that he signed is deficient because it contains errors in parts of its English translations. *See id.* at 4-5. The sum of Guide's argument comes from the Sixth Circuit's statement in *Martin*, 704 F.2d at 273, that "a defendant ignorant of the nature of the jury trial right cannot intelligently weigh the value of the safeguard."

As previously noted, Guide bears the burden of production and the burden of persuasion to show that his waiver was not knowing and intelligent. *Williams*, 559 F.3d at 613; *Frechette*, 456 F.3d at 12-13. In evaluating Guide's waiver, the court may also consider the "unique circumstances" of Guide's case that bear on his ability to understand the right to waive a jury trial and on a defendant's ability to understand discussions regarding the waiver of the right to a jury trial. *See Leja*, 448 F.3d at 93-94; *Sowell*, 372 F.3d at 831-36; *Pfeifer*, 371 F.3d at 434. In evaluating whether Guide's waiver was knowing and intelligent, however, Guide's waiver need not take a particular form in order to be valid. *See Williams*, 559 F.3d at 610; *Sowell*, 372 F.3d at 834 (citing *Martin*, 704 F.2d at 274-75); *Hyatt*, 468 F. Supp. 2d at 1114-15.

The court finds that Guide has failed to show that his waiver of his right to a jury trial was not knowing and intelligent. Central to the court's finding is the fact that the advisement of Guide's right to waive his right to a jury trial was delivered both orally in Karen and in writing in Karen. Docket 67 at 68-70. And if Guide did not understand those rights, he was directed to either ask questions of the interpreter, his attorney, or the court. *Id.*; *see* Exhibit A-9 and Exhibit A-10 (translated advisement of rights form); *see also* note 11, *supra.*

Because the court must assume that the Beadle County court followed its normal practices, *see Bethurum*, 343 F.3d at 717-18; *Jennings*, 323 F.3d at 276, this was at least the third time Guide had been informed both orally by an interpreter and in writing that he had the right to waive his jury trial. Thus, given that Guide speaks and reads Karen, Docket 67 at 49-50, it is difficult for the court to credit Guide's testimony that he was too nervous and anxious to have read this form before signing it.[13]

The court reaches a similar conclusion regarding Guide's contention that errors in the English portions of the advisement of rights form make the form insufficient to provide evidence of a knowing and intelligent waiver of his jury trial right. Docket 67 at 4-5. While Guide is correct that typographical errors exist in the English portions of the form, *see* Exhibits A-9 and A-10, Guide bears the burden to demonstrate that these errors make his signed waiver ineffective. *See Williams*, 559 F.3d at 613; *Frechette*, 456 F.3d at 12-13. Because Guide presented no evidence at the evidentiary hearing to indicate that the Karen portions—the only portions that Guide could read—are incorrect, the court finds that he has failed to carry his burden on this point. The court also observes that uncontradicted testimony from the hearing

---

[13] While the record for Guide's October 2, 2013 hearing indicates that he possessed the advisement of rights form for about 20 minutes, *see* Exhibit 1 at 2-4 (proceedings began at 8:59 a.m. and Guide's case called at 9:22 a.m.), Guide likely possessed the form for even longer at his other two September hearings for this case. *See* Exhibit 2 at 2-4 (Beadle County Transcript from September 18, 2013 proceedings began at 8:59 a.m. and Guide's case called at 9:28 a.m.) and Exhibit 3 at 2-4 (Beadle County Transcript from September 4, 2013 proceedings began at 9:00 a.m. and Guide's case called at 10:22 a.m.).

actually demonstrates that the Karen portions of the advisement of rights form are accurate translations. *See* Docket 67 at 66.

In evaluating Guide's waiver, the court concludes that his signature on the advisement of rights form is sufficient to demonstrate that Guide knowingly and intelligently waived his jury trial right. In making this conclusion, the court observes that Guide's reliance on *Martin*, 704 F.2d at 273 is slightly misplaced. This is because, as the Sixth Circuit has more recently observed, "the *Martin* court clearly held that colloquies are not constitutionally required and that an extremely perfunctory waiver with no colloquy was constitutionally adequate." *Sowell*, 372 F.3d at 834 (citing *Martin*, 704 F.2d at 274-75). Additionally, despite Guide's background and limited education, it is clear that his repeated presence in the Beadle County courtroom, where he received oral and written translations of his right to waive his jury trial each time, discredit his own testimony that he was too anxious to understand what was going on in the courtroom or read the advisement of rights form. *See* Docket 67 at 45-47.

Guide has failed to show that his waiver on the advisement of rights form was not knowing and intelligent. Thus, recognizing that Guide's waiver of his right to a jury trial need not take a particular form, *see Williams*, 559 F.3d at 610; *Sowell*, 372 F.3d at 834 (citing *Martin*, 704 F.2d at 274-75); *Hyatt*, 468 F. Supp. 2d at 1114-15, the court concludes that the evidence and testimony presented demonstrates that Guide knowingly and intelligently waived his right to a jury trial when he pleaded guilty to misdemeanor domestic abuse.

## CONCLUSION

Guide understood that he possessed the right to a jury trial on his charge of Simple Assault Domestic Abuse in violation of SDCL § 22-18-1(5). On October 2, 2013, Guide, understanding that he had the right to waive his right to a jury trial, did so both knowingly and intelligently by signing the advisement of rights form and pleading guilty to the charge of Simple Assault Domestic Abuse in violation of SDCL § 22-18-1(5). Guide's October 2013 conviction, therefore, qualifies as a "misdemeanor crime of domestic violence" and falls under the exception found in 18 U.S.C. § 921(a)(33)(B)(i). Thus, charges against Guide under 18 U.S.C. § 922(g)(9) are proper. Thus, it is

ORDERED that Guide's motion to dismiss the indictment (Docket 55) is denied.

DATED March 17, 2017.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE